IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3507 |
| | § | |
| ARTHUR RAY HARRISON, *et al.*, | § | |
|     Defendants. | § | |

_____

| | | |
|---|---|---|
| IN RE: | § | |
| ARTHUR R. HARRISON, | § | BANKRUPTCY CASE NO. 04-46820 |
|     Debtor. | § | |

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| (INTERNAL REVENUE SERVICE), | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | ADV. NO. 06-3276 |
| | § | |
| ARTHUR R. HARRISON, | § | |
|     Debtor/Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff United States of America filed this civil lawsuit and the bankruptcy

adversary proceeding seeking to recover unpaid income taxes owed by Defendant

Arthur Harrison ("Harrison").  Plaintiff seeks to foreclose on property either owned by

Harrison in his own name or held in the name of an individual whom Plaintiff contends

is Harrison's nominee.  The United States also seeks the revocation of Harrison's discharge in his Chapter 7 bankruptcy proceeding, and a finding that Harrison is in contempt of Court orders previously issued in this case.

The case was tried to the Court beginning February 12, 2007.  Having heard and observed the witnesses, and having reviewed all matters of record in this case, the Court makes the following findings of fact and conclusions of law.[1]

## I.   GOVERNING LEGAL PRINCIPLES

### A.   Texas Uniform Fraudulent Transfers Act

The United States argues that Harrison fraudulently transferred and/or concealed assets in which he has an interest.  The United States, therefore, seeks to foreclose on those assets to satisfy Harrison's income tax liability.

The Texas Uniform Fraudulent Transfers Act ("Texas UFTA"), Texas Business and Commerce Code § 24.005, provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or obligation was incurred, if the debtor made the transfer or incurred the obligation: . . . (1) with actual intent to hinder, delay, or defraud any creditor or debtor.

---

[1] The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law.  To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

TEX. BUS. & COM. CODE § 24.005(a)(1).  The intent to hinder, delay or defraud are three separate elements any one of which will support a finding of fraud. *See In re Brentwood Lexford Partners, L.L.C.*, 292 B.R. 255, 262 (Bank. N.D. Tex. 2003).  The intent to "delay or defraud may be established by circumstantial evidence." *Id*. at 263 (citing *In re Reed*, 700 F.2d 986, 991 (5th Cir. 1983)).  The Texas UFTA has a non-exhaustive list of "badges of fraud," which may be used by courts to determine intent to hinder, delay or defraud.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000).  These badges of fraud include, but are not limited to: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred; and (3) the transfer or the asset was concealed.  *See* TEX. BUS. & COM. CODE § 24.005(b).  Fraudulent intent is presumed "when property is either transferred gratuitously or is transferred to relatives." *Pavy v. Chastant (Matter of Chastant)*, 873 F.2d 89 (5th Cir. 1989).

## B.    Revocation of Bankruptcy Discharge

The United States argues that Harrison obtained a discharge in bankruptcy that should be revoked under 11 U.S.C. § 727.  The United States argues that Harrison obtained the discharge through fraud and that Harrison failed to comply with the requirements of the Bankruptcy Code.

Under § 727(d) of the Bankruptcy Code, a creditor can request the revocation of a discharge based on any one of the following:

    (1)    such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

    (2)    the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

    (3)    the debtor committed an act specified in subsection (a)(6) of this section [refused to testify, or failed to obey a court's order]; or

    (4)    the debtor has failed to explain satisfactorily –
    (A)    a material misstatement in an audit referred to in section 586(f) of title 28; or
    (B)    a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

11 U.S.C. § 727(d). Additionally, a discharge may be revoked under § 727 if a debtor fails to comply with the requirements of the code. *See United States v. Cluck*, 87 F.3d 139, 140 (5th Cir. 1996) (upholding the Bankruptcy Court's revocation of the defendant's discharge because he failed to disclose property and assets, made false statements in his bankruptcy schedules, fraudulently transferred property, and repeatedly disregarded court orders).

A "party attempting to revoke a debtor's discharge under 727(d)(1) must show 1) the discharge was obtained through fraud of the debtor, 2) the party requesting the revocation did not know of the debtor's fraud until after the discharge was granted, and 3) grounds exist which would have prevented the debtor's discharge had they been known." *In re Landry*, 350 B.R. 51, 56 (Bkrtcy. E.D. La. 2006).

### C.    **Motions for Contempt**

The United States filed two motions [Doc. # 138 and Doc. # 145] seeking an order holding Harrison in contempt for contacting two witnesses in the case. Since the United States seeks compensation for Harrison's conduct, the contempt would be civil in nature. *See Matter of Terribonne Fuel and Lube, Inc.*, 108 F.3d 609, 612 (5th Cir. 1997).

## II.   **FINDINGS OF FACT**

As the trier of fact in this case, the Court evaluated the witnesses' credibility. The Court finds many, if not most, of Defendants' witnesses' testimony was in significant respects unworthy of belief.  In particular, Harrison, Sharonda Lashea Harris, Audra Harrison, and Floyd Young gave testimony that was contradictory, internally inconsistent, and on occasion bizarre.  For example, Harrison testified through racking sobs that his wife Lillie Harrison was emotionally scarred because Internal Revenue Service ("IRS") Agent James Ashton peeped at her through a window

at her home while he was trying to serve a deposition subpoena.[2]  Ashton **and Mrs. Harrison** both testified, however, that Ashton did not peep in Mrs. Harrison's window.

Based on the Court's evaluation of witness credibility, the Court makes the following findings of fact.

### A.    Parties and Disputed Properties

Plaintiff is the United States of America, and the specific agency involved in the IRS.

Defendant Arthur Ray Harrison is the relevant taxpayer.  Defendant Floyd Young is Harrison's friend and previously worked for Harrison as a mechanic. Defendant Audra Renee Harrison ("Audra Harrison") is Harrison's adult daughter. Defendant Lillie Harris Harrison is Harrison's wife.  Defendant Brazos County is a local taxing authority to which property taxes are owed on certain of the disputed properties.  All Defendants reside or are located in the Southern District of Texas.

The disputed properties include real property located in Bryan, Texas, at 2536 Pinon Court, 307 N. Texas Avenue, 1107 S. Texas Avenue, 503 East 24th Street, and 1095 N. Earl Rudder Freeway.[3]  The disputed properties also include a business known

---

[2]     Harrison's attorney sent a letter to the IRS demanding a million dollars for the Harrisons' damages caused by the IRS's attempts to serve subpoenas in this case.

[3]     The United States also disputes Audra Harrison's title to 901 Harlem Lane, but does not include the property as part of this lawsuit because of its very low tax-assessed value.

as A&A Auto Rentals and Sales and variations of that name, as well as three vehicles – a 1999 Cadillac Escalade, a 1987 MCI bus, and a 1984 GMC bus.

**B.   Harrison's Income Tax Liability and Liens**

On the dates indicated in the following chart, a delegate of the Secretary of the Treasury made assessments and gave notice and demand against Harrison for his federal unpaid income taxes, penalties, and interest in the amounts and for the tax years shown:

| Tax Year | Unpaid Balance | Assessment Date | Date Tax Lien Filed |
|---|---|---|---|
| 1990 | $ 56,574.25 | 03/24/1997 | 07/28/1997 |
| 1991 | $ 28,439.22 | 03/24/1997 | 07/28/1997 |
| 1993 | $  3,122.49 | 10/28/1996 | 07/28/1997 |
| 1995 | $ 11,358.59 | 02/17/1997 | 07/28/1997 |
| 1996 | $ 55,407.94 | 10/20/1997 | 11/17/1997 |

Despite notice and demand, Harrison has not paid his income taxes.  As of September 1, 2006, Harrison owed the IRS $217,966.63 (including interest and penalties) for his unpaid 1990, 1991, 1993, 1995, and 1996 income taxes.[4]

On February 11, 1997, Harrison entered into an agreed Decision in his United States Tax Court case stipulating to tax deficiencies for his 1990 and 1991 income taxes.

---

[4]   On November 7, 2006, the Court entered a partial summary judgment ruling to this effect.

On July 28, 1997, the United States filed federal tax liens against Harrison in the real and personal property records of Brazos County, Texas for his unpaid income taxes for tax years 1990, 1991, 1993, and 1995.  On November 17, 1997, the United States filed a federal tax lien against Harrison in the real property records of Brazos County, Texas for his unpaid income tax for the 1996 tax year.

On September 17, 2004, the IRS filed a nominee lien against Floyd Young as nominee, alter-ego and/or transferee of Arthur R. Harrison, which lien encumbers the property at 1101 S. Texas Avenue in Bryan, Texas.  On that same day, the IRS filed a nominee lien against A&A Auto Sales and A&A Auto Sales & Rentals, as nominees, alter egos, and/or transferees of Arthur R. Harrison, which lien also encumbers the business A&A Auto Rentals and Sales.  On September 24, 2004, the IRS filed a nominee lien against Floyd Young as nominee, alter/ego and/or transferee of Arthur R. Harrison, which lien encumbers the 307 N. Texas property.

## C.    **Analysis Regarding Disputed Properties**

### 1.    **2536 Pinon Court**

By warranty deed recorded November 19, 1991, Harrison acquired real property located at 2536 Pinon Court in Bryan, Brazos County, Texas, with the following legal description:

> Being all that certain lot, tract or parcel of land lying and being situated in Brazos County, Texas, and being Lot TWO (2), Block TWO (2), ALLEN RIDGE PHASE ONE, an addition in the City of Bryan, Brazos County, Texas, as shown on plat recorded in Volume 373, Page 469, Official Records of Brazos County, Texas.

Harrison's homestead is located on this property. According to the Brazos County real property records, Harrison is the fee simple owner of his homestead, but his wife, Lillie Harrison, has a homestead interest in the property. The parties have stipulated that Mrs. Harrison's homestead interest in this property is 51.138% and Mr. Harrison's homestead interest in the property is 48.863%. The IRS is entitled to foreclose its interest in this property, and these percentages will be applied to the sales price after payment of all expenses of sale and any unpaid *ad valorem* taxes owed to the County of Brazos.

### 2.    307 N. Texas Avenue

On or about February 21, 1997, Harrison acquired by special warranty deed from Raymond Lehman certain commercial real property located at 307 N. Texas Avenue in Bryan, Brazos County, Texas, having the following legal description:

> All that certain lot, tract or parcel of land lying and being situated in Brazos County, Texas, and being Lot Six-R (6-R), Block Forty-Three (43), City of Bryan, an addition to the City of Bryan, Brazos County, Texas, according to a vacating and resubdivision plat of Lot 6 and 38' of Lot 7, Block 43, Original Townsite of Bryan, the plat recorded in Volume 810, Page 745 of the Official Records of Brazos County, Texas.

The United States' statutory tax lien against this property pursuant to 26 U.S.C. § 6321 arose on the day the IRS assessed the unpaid taxes in October 1996, February 1997, and March 1997.

On or about April 14, 1997, after the IRS made federal income tax assessments against Harrison for his 1990, 1991, and 1993 income tax and after the statutory liens attached to the property, Harrison conveyed to Floyd Young a life estate in the real property at 307 N. Texas Avenue in Bryan, Texas.[5]  Young, a convicted felon[6] and Harrison's mechanic, claims to have paid approximately $40,000.00 for the life estate. Young claims to have borrowed the money in cash from Robert Polk,[7] but there are no records to support the existence of the loan.  Young testified during his deposition in this lawsuit that he put the money in a safe, stating unequivocally that he did not put it under his mattress.  He testified to the contrary at trial, stating that he put the cash under his mattress.

---

[5]  Young at trial claimed that he purchased the fee ownership of the property.  There are no documents that support this claim.

[6]  Young testified at trial that he asked Harrison to purchase the property in Harrison's name because, as a convicted felon, Young anticipated difficulties obtaining an automobile dealer's license.

[7]  An individual named Gloria Polk Davenport testified at trial that she loaned over $40,000.00 to Harrison, but there is no credible evidence of a $40,000.00 loan from Robert Polk to Floyd Young.

On October 20, 1999, more than two years after Harrison claims to have transferred a life estate in the property to Young, a final decree of divorce was entered in the 21st Judicial District Court of Burleson County, Texas, in *The Matter of the Marriage of Katherine Harrison and Arthur Ray Harrison*, Case No. 21,860. In the divorce decree, Harrison personally was awarded the real property located at 307 N. Texas Avenue in Bryan, Brazos County, Texas.

In his 2004 income tax return, filed in May 2006, Harrison listed 307 N. Texas Avenue as his home address.

Harrison operated and continues to operate an automobile rental and sales business on the property at 307 N. Texas Avenue. Young does not work at this business, but works at his own business, Floyd's Auto Repair, located at 908 Turkey Creek in Bryan. Young has not used his life estate in the 307 N. Texas Avenue property. The transfer of a life estate to Young was fraudulent, and Harrison is the true owner of the 307 N. Texas Avenue property. As a result, the IRS is entitled to sell the property to satisfy Harrison's outstanding federal income tax liability.

### 3.    1101 S. Texas Avenue

On or about June 30, 2000, Harrison acquired by warranty deed a remainder interest in commercial real property located at 1101 S. Texas Avenue in Bryan, Texas, having the following legal description:

Surface estate only of all that certain tract or parcel of land lying and being situated in Brazos County, Texas, and being Lots Nos. 1 and 2, Winter's Addition, City of Bryan, Brazos County, Texas, according to plant in Volume M, Page 40½ Civil Minutes District Court of Brazos County, Texas.

Simultaneously, Floyd Young purportedly acquired a life estate in this property. Young has produced an $80,000.00 cashier's check that was used to purchase the property. He claims the source of these funds was the profits from the business at the 307 N. Texas location, but no records support Young's claim that 307 N. Texas Avenue ever generated sufficient income to provide Young the $80,000.00 purchase price for the 1101 S. Texas Avenue property. This explanation, in addition to being incredible in light of other evidence pertaining to the business, is inconsistent with Young's deposition, in which he testified that he borrowed the $80,000.00 from Polk, the same person from whom he claims to have borrowed the $40,000.00 in cash to purchase what turned out to be a purported life estate in 307 N. Texas Avenue.

Young admits that he did not negotiate the purchase of 1101 S. Texas Avenue, he does not remember the name of anyone involved in the transaction, and he did not attend the closing.

Young has not used the 1101 S. Texas Avenue property. Instead, Harrison used and uses this property in connection with his businesses, specifically housing buses there that he uses for casino trips and other travel services.

Also on June 30, 2000, Harrison executed an "Option Contract for Purchase of Real Estate" giving Harrison the option to buy Young's life estate in the 1101 S. Texas Avenue property.

Richard Rosas, a realtor in Bryan, testified at trial that it was his understanding that Harrison owns the two properties on Texas Avenue.

Young's purported life estate is fraudulent. Harrison is the true owner of the property at 1101 S. Texas Avenue, which is subject to sale by the IRS to satisfy Harrison's unpaid federal income taxes.

### 4.    A&A Auto Rentals and Sales

Harrison and Young assert that Young owns A&A Auto Rentals and Sales and that Harrison manages the business for Young. Young believes he has an assumed name document, but he was not sure when he testified at trial and he had not produced one during discovery. Young stated that he paid Harrison $2,000.00 for the stock in A&A Auto Rentals and Sales, yet the business is not incorporated and has no stock.

Harrison claims he is not paid by A&A Auto Rentals and Sales, although he operates it as his own business. Indeed, in his Schedule I in the bankruptcy case he identified himself as "self-employed" in the car rental business, which is consistent with his ownership of A&A Auto Rentals and Sales.

In the final divorce decree in *The Matter of the Marriage of Katherine Harrison and Arthur Ray Harrison* referenced above, Harrison was awarded the business known as A&A Auto Rentals and Sales, a sole proprietorship, as well as all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, supplies, and all personal property used in connection with the operation of this business.

Roxie Miller, Harrison's employee for a brief time in June 2004, testified at trial that Harrison told her that he and Young owned the business together, but that she saw no indication Young was involved in A&A Rentals and Sales. She never saw Young and never received any instructions from him. She was not aware of anyone other than Harrison making decisions or otherwise controlling the business. Instead, Harrison hired her, paid her, set her hours, and opened and closed the office each day. Miller testified that the bills at A&A Auto Rentals and Sales were in Harrison's name and Harrison paid them.[8] Miller testified that Harrison told her not to talk to an IRS agent if he came to the A&A Auto Rental and Sales office where Miller worked. The Court finds Miller's testimony to be credible.

Twila Dawn Adams also testified at trial. Adams worked for Harrison briefly in early 2006 at both the 307 N. Texas Avenue and the 1101 S. Texas Avenue

---

[8]     Generally, Harrison would write the checks for A&A Auto Rentals and Sales and have Young sign them.

locations.  She knew of Young only as a mechanic.  Adams testified that Harrison told her not to speak with the IRS.

Richard Rosas, a realtor and long-time resident of the Bryan area, testified at trial that Harrison's primary business is A&A Auto Rentals and Sales.

Burlington Insurance Company issued a sizeable insurance policy to Arthur Harrison d/b/a A&A Auto Rentals and Sales, 307 N. Texas Avenue, and Harrison claimed the insurance expense on his income tax returns.

Harrison and A&A Auto Rentals and Sales were named defendants in a lawsuit in Brazos County filed by Joseph Swonke regarding an accident involving "A&A's Tow Truck."  Harrison filed a counterclaim against Swonke alleging "damage to *my* vehicle" (emphasis added).

Young, a convicted drug dealer, admitted at trial that he had no familiarity with the automobile business when he allegedly bought it.[9]  Young also admitted that he has never advised Harrison about how to operate the business.  Harrison testified at trial that he gives Young sales reports regarding the A&A Auto Rentals and Sales vehicles, but neither he nor Young produced even one such report.  Young testified at trial that

---

[9]      Young stated that he has bought vehicles at auction, but he gave no specifics.  The Court does not credit Young's testimony.

he had more than $20,000.00 in income from A&A Auto Rentals and Sales in 2005, but he did not report any such income on his tax return.

The business operated as A&A Auto Rentals and Sales and numerous variations of that name, including "A&A Auto Sales" and "A&A Auto Rentals," is a sole proprietorship owned by Harrison.  As a result, its assets are subject to sale by the IRS to satisfy Harrison's tax liability.

### 5.    503 East 24th Street

Audra Harrison is the record owner of commercial real property located at 503 E. 24th Street in Bryan, Texas, and having the following legal description: "Lots 6 and 7, Block 52, Pt. 8, City of Bryan, Brazos County, Texas."[10]  Richard Rosas, the real estate agent who handled the purchase of the property, dealt only with Harrison, but Audra Harrison attended the closing.  Audra Harrison was approximately 18 years old and had just graduated from high school.

Harrison paid the $1,000.00 down payment for the $20,000.00 purchase of the property in Audra Harrison's name in 1995.  Harrison signed Audra Harrison's name to the earnest money contract and most of the other purchase documents.[11]  During the course of this lawsuit, Audra Harrison has given materially inconsistent statements

---

[10]    The 503 E. 24th Street property is located behind the 307 N. Texas Avenue property.

[11]    Audra Harrison signed the Settlement Statement.

regarding the source of the funds she allegedly used to purchase the property.  The Court is unpersuaded that she has any accurate recollection of the acquisition of this property.  The alleged sources of the funds, including high school graduation gifts, college scholarships, and money from her grandmother, were not realistically sufficient to supply the $19,000.00 balance for the purchase of the property.  Nor is it credible that Audra Harrison spent her limited funds on real estate for speculation or her father's business use, given her other financial needs at the time.  She required college scholarships and student loans, and she worked thirty (30) hours per week while in college.

Since 1995, Harrison has been the primary user of the 24th Street property in connection with his business operated as A&A Auto Rentals and Sales.  Harrison paid for business insurance on the property.  Audra Harrison has neither used the property nor charged Harrison for its use.

Audra Harrison obtained student loans, but did not list the 503 E. 24th Street property as an asset on her applications.

In March 2001, Audra Harrison submitted a residential loan application to Countrywide Home Loans, Inc. for the $48,000.00 purchase of a condominium.  In the loan application, she did not list the 24th Street property as belonging to her and answered "no" to the question of whether she owned other real estate.

Roxie Miller testified at trial that Harrison told her that he owned the 24th Street property but had it in his daughter's name so he would not have to pay the IRS. Although Miller worked for Harrison only a couple of weeks, the Court finds her to be a credible witness.

On September 12, 2005, Harrison filed a lawsuit in Brazos County claiming to be the "owner/landlord" of the 24th Street property. On September 26, 2005, Harrison obtained a judgment of eviction, recovering possession of the 24th Street property.[12]

In June 29, 2006, Audra Harrison obtained a divorce from Marcus Smith. She did not list the 24th Street property as her asset in the divorce.

Audra Harrison, although listed as the record owner of the 24th Street property, holds the property as a nominee for Harrison, the true owner of the property. As a result, the property is subject to sale to satisfy Harrison's federal income tax liability.

### 6.    1095 N. Earl Rudder Freeway

Audra Harrison is the record owner of five acres of commercial real property located at 1095 N. Earl Rudder Freeway in Bryan, Texas, having the following legal description: "John Austin, Block 15, Lot 5, TR-266, 5.45 acres, Brazos County, Bryan, Texas. The property was purchased for $11,050.00 at a Sheriff's sale in January 2004. Harrison signed Audra Harrison's name to the bid information sheet. Audra Harrison

---

[12]    Audra Harrison testified at trial that she was unaware anyone had lived on the property.

attended the sheriff's sale, but was unsure how much was paid for the property.[13] Audra Harrison testified at trial that, after she paid her living expenses in 2003, she still had approximately $1,000-$1,200 remaining each month.  Prior to 2003, Audra Harrison did not have sufficient income to have saved sufficient sums to purchase this property.  Also, the Court finds that Audra Harrison, given her preoccupation with the possibility that a family member may need her financial assistance, would not have used what was likely her entire savings as of January 2004 to purchase the Earl Rudder Freeway property – undeveloped land.

Audra Harrison did not list the Earl Rudder Freeway property as an asset in her 2006 divorce proceeding.

Realtor Richard Rosas testified at trial that he recently contacted Harrison about selling the Earl Rudder Freeway property.  Rosas testified that he has never discussed the potential sale with Audra Harrison.

Audra Harrison, although listed as the record owner of the 1095 N. Earl Rudder Freeway property, holds the property as a nominee for Harrison, the true owner of the property.  As a result, the property is subject to sale to satisfy Harrison's federal income tax liability.

---

[13]     When she appeared for deposition initially, Audra Harrison failed to bring any documents concerning the property.

### 7.    1999 Cadillac Escalade

Audra Harrison holds title to a 1999 Cadillac Escalade that was previously titled to A&A Auto Rentals and Sales.  Harrison uses the Cadillac Escalade and pays the insurance on it.  Audra Harrison did not list the Cadillac Escalade in her 2006 divorce proceeding.

Audra Harrison holds title to the 1999 Cadillac Escalade as a nominee for Harrison, its true owner.  As a result, the vehicle is subject to sale to satisfy Harrison's federal income tax liability.

### 8.    1987 MCI Bus/1984 GMC Bus

Audra Harrison holds title to a 1987 MCI bus and a 1984 GMC bus that were owned by A&A Auto Rentals and Sales until title was transferred to Audra Harrison. She claims that she purchased the MCI bus in December 2004 because she and her then husband wanted to start a bus travel business, but it is undisputed that they never used the bus.  Audra Harrison testified that she purchased the 1984 GMC bus, which she referred to as a van or SUV, in October 2005 for trips to Virginia with her husband. She filed for divorce in November 2005.

Harrison is the only person who has used the two buses, and he did so in connection with his travel business, driving clients on casino trips and driving church groups on various trips.  Harrison does not pay Audra Harrison for his use of the buses,

but he pays the insurance on them.  The buses were kept at the 1101 S. Texas Avenue location.

Audra Harrison did not list either bus in her 2006 divorce proceeding.

Harrison filed a lawsuit against Diesel Supply in Brazos County regarding repairs to the MCI bus, indicating in the lawsuit that he owned the bus.

Audra Harrison, although title owner of these two buses, holds them as a nominee for Harrison, their true owner.  As a result, the buses are subject to sale to satisfy Harrison's federal income tax liability.

### D.    Harrison's Bankruptcy

On November 30, 2004, Harrison filed bankruptcy in the Southern District of Texas, Case No. 04-46820, as a "no asset" Chapter 7 proceeding.  At the time, the IRS was his largest secured creditor.   Nonetheless, Harrison scheduled the IRS as an unsecured priority creditor with undisputed claims.  Harrison did not schedule the IRS as a secured creditor, although he knew it had existing federal tax liens.

Harrison filed the required bankruptcy schedules and his statement of financial affairs.  He did not, however, schedule any interest in the real properties at 307 N. Texas and 1101 S. Texas in Bryan, Texas, even his alleged remainder interests after the termination of Young's purported life estates.  He also failed to schedule his interest in the real properties at 503 East 24th Street and 1095 E. Earl Rudder Freeway.

When Harrison filed bankruptcy, he was self-employed at A&A Auto Rentals and Sales, his car rental business, at 307 North Texas Avenue.  He did not, however, disclose this business interest, his business interest in A&A Travel Agency, or any ownership interest in motor vehicles.  He disclosed $5,500 in income for the tax year 2004, yet he reported $571 total income in his 2004 federal income tax return.

In his statement of financial affairs in his bankruptcy, Harrison disclosed no lawsuits, although he was a party to two lawsuits filed in Justice of the Peace courts at the time he filed bankruptcy.

On or about January 15, 2005, while he was in bankruptcy, Harrison gave the IRS a Collection Information Statement for Wage Earners and Self-Employed Individuals, signed under penalties of perjury, that included a false statement that he had never filed bankruptcy.[14]

On March 21, 2005, Harrison received a general Chapter 7 bankruptcy discharge.  On March 13, 2006, the United States timely filed Adversary Proceeding No. 06-3276 against Harrison.

Harrison made false statements in his Section 341 creditors' meeting, stating that he had a common law wife and that his residence was his only property.  Harrison also

---

[14]     Within the bankruptcy case, Harrison also did not give the IRS proper notice of the bankruptcy filing and included the wrong address for the IRS.

made numerous false statements in his bankruptcy schedules and in his statement of

financial affairs in his bankruptcy case.  Harrison failed to disclose in his bankruptcy

certain real property in which he had an interest, as well as vehicles and buses held in

Audra Harrison's name.  He failed to disclose his true income and business interests

in his bankruptcy.  As a result of these many false statements, Harrison obtained his

discharge through fraud and he failed to disclose to the Chapter 7 trustee property in

which he had an ownership interest.  Harrison's discharge in bankruptcy is revoked

pursuant to 11 U.S.C. § 727(d).

### E.    Contempt Motions

The United States seeks an order holding Harrison in contempt for contacting

witnesses Joann Gonzalez and Roland Searcy.  It is undisputed that, after Harrison

learned that the United States intended to call Gonzalez as a witness, he went to her

home to discuss her testimony.  The Court finds that, although Harrison told Gonzalez

to "tell the truth," he instructed her regarding what she should say.  Gonzalez testified

that she was not afraid of Harrison, but was concerned that Harrison might try to take

her house.[15]  After considering all the testimony, the witnesses' demeanor, and the other

evidence of record, the Court finds that Harrison's contact with Gonzalez, while highly

---

[15]     Gonzalez and her husband were parties to a real estate transaction involving Harrison and his
step-daughter, Sharonda Harris.  The Gonzalezes made payments to Harrison, which he
maintains he then gave to Sharonda Harris.

inappropriate, did not affect Gonzalez's testimony at trial and does not rise to the level of contempt.

By Order issued January 31, 2007 [Doc. # 139], the Court ordered Harrison not to have contact with any person, other than his family members, who might be a witness in the case. After entry of the January 31, 2007 Order, Harrison contacted the law office of Roland Searcy asking the name of the employee who signed a cash receipt in connection with the real estate transaction involving the Gonzalezes. The receptionist gave Harrison the employee's name, but when Harrison asked to speak to the employee, the receptionist refused to transfer Harrison's call. Again the Court finds Harrison's conduct to be improper. However, Harrison's attempt to contact the employee was unsuccessful and the person he sought to contact was never listed as a witness for trial. As a result, the attempted contact did not affect the evidence at trial. The Court finds that the conduct does not rise to the level of contempt.

## III.    <u>CONCLUSIONS OF LAW</u>

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402 and 7403. Venue is proper in this district pursuant to 28 U.S.C. § 1396. The Court has personal jurisdiction over Defendants, who all reside in the Southern District of Texas.

Under 26 U.S.C. § 7402(a), the United States is entitled to a final judgment in its favor against Arthur Harrison for his unpaid 1990, 1991, 1993, 1995, and 1996 income taxes, in the amount of $217,966.63, plus interest and penalties thereon from September 1, 2006 until paid.

Under 26 U.S.C. §§ 6321 and 7403(a), the federal tax liens filed against Harrison and the nominee liens against Young are valid, and the Court enforces these federal tax liens.  The real properties at 307 N. Texas Avenue, 1101 S. Texas Avenue, 1095 N. Earl Rudder Freeway, and 503 East 24th Street are ordered sold to pay Harrison's income tax liability.  Additionally, the assets of A&A Auto Rentals and Sales, the 1999 Cadillac Escalade, the 1987 MCI bus, and the 1984 GMC bus are ordered sold to pay Arthur Harrison's income taxes.

Under the Texas Uniform Fraudulent Transfer Act, § 24.005 of the Texas Uniform Fraudulent Transfer Act, the Court concludes that Harrison fraudulently transferred and/or concealed assets in which he has an interest that are encumbered by federal tax liens.  Specifically, the real properties at 307 N. Texas, 1101 S. Texas, 1095 N. Earl Rudder Freeway, and 503 East 24th Street, the assets of A&A Auto Rentals and Sales, the 1999 Cadillac Escalade, and the 1987 MCI and 1984 GMC buses are ordered sold to pay Arthur Harrison's income taxes.

Harrison's purported transfer of a life estate in the real property at 307 N. Texas to Young was a fraudulent transfer under the Texas Uniform Fraudulent Transfer Act. Young is a nominee of Harrison, who is the true owner of the entire property.

Under 26 U.S.C. § 6321, federal tax liens attach to Harrison's interest in certain real and personal property titled to Audra Harrison and Floyd Young.  Specifically, the federal tax liens attach to the real properties at 307 N. Texas, 1101 S. Texas, 1095 N. Earl Rudder Freeway, and 503 East 24th Street, as well as to the 1999 Cadillac Escalade, the 1987 MCI bus, and the 1984 GMC bus.  The federal tax liens also attach to the assets of the business operated as A&A Auto Rentals and Sales and variations of that business name.

The United States has established the requirements of 11 U.S.C. § 727(d).  As a result, Harrison's Chapter 7 bankruptcy discharge is revoked due to his fraud.[16]  The federal tax liens filed against Harrison survived his bankruptcy, passed through unaffected by his revoked discharge, and encumber all property in which he had an interest as of the bankruptcy petition date (November 30, 2004).

---

[16]     For the reasons stated in the Court's summary judgment ruling, the United States is entitled to a final judgment that Harrison's 1990, 1991, 1993, 1995, and 1996 federal income tax liability is non-dischargeable under 11 U.S.C. § 523(a)(1)(C), due to Harrison's willful attempts to evade or defeat his taxes.

The United States is entitled to foreclose on properties subject to the federal tax liens, including Harrison's interest in the real property at 2536 Pinon Court in Bryan, Texas. The Pinon Court property shall be sold to pay a portion of Harrison's federal income taxes, and Lillie Harrison shall be compensated for her homestead interest in this property out of the net sales proceeds from the sale of the property. Mrs. Harrison's homestead interest in this property is 51.138%, and Mr. Harrison's homestead interest in the property at 48.863%. These percentages will be applied after payment of expenses of sale and any unpaid *ad valorem* taxes owed to the County of Brazos.

Harrison's conduct, while inappropriate, did not rise to the level of civil contempt.

## IV.  **CONCLUSION**

Harrison is the true owner of the disputed properties, consisting of 2536 Pinon Court, 307 N. Texas Avenue, 1107 S. Texas Avenue, 503 East 24th Street, 1095 N. Earl Rudder Freeway, A&A Auto Rentals and Sales and variations of that name, a 1999 Cadillac Escalade, a 1987 MCI bus, and a 1984 GMC bus. The United States is entitled to sell this property to satisfy Harrison's outstanding federal income tax liability.

In his bankruptcy proceeding, Harrison fraudulently failed to disclose the full extent of his assets and intentionally made numerous false statements.  As a result, Harrison's discharge is revoked.

The United States's contempt motions [Doc. # 138 and Doc. # 145] are **DENIED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this 13th day of **March, 2007**.

Nancy F. Atlas
United States District Judge